IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Eddie LEON, JR.,

    Plaintiff,

vs.                                                                                                    Civ. No. 18-1203 JAP/JFR

LAWRENCE STABLES and
BRI-COR TRANSPORTATION, LLC.

    Defendants.

## MEMORANDUM OPINION AND ORDER

On February 11, 2020, Defendants filed DEFENDANTS LAWRENCE STABLES' AND BRI-COR TRANSPORTATION, LLC'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RENE LUJAN ("Defendants' Motion") (Doc. No. 38). The same day, Plaintiff filed a MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY BY JAMES W. JOHNSON ("Plaintiff's Motion") (Doc. No. 39). On March 18, 2020, Defendants filed DEFENDANTS LAWRENCE STABLES AND BRI-COR TRANSPORTATION, LLC'S MOTION TO STRIKE UNTIMELY SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF RENE LUJAN ("Motion to Strike") (Doc. No. 49) in response to Plaintiff's filings. The Court held a Daubert Hearing on April 20, 2020, to help resolve these motions.

**Factual Background**

This dispute stems from a motorcycle and tractor-trailer collision that occurred August 7, 2017, in Albuquerque, New Mexico. *See* AMENDED NOTICE OF REMOVAL, Exh. A, COMPLAINT TO RECOVER DAMAGES FOR PERSONAL INJURY ("Complaint") (Doc. No. 6-1) at ¶ 6. Although there is some dispute as to exactly how the incident occurred, Plaintiff Leon's

1

motorcycle collided with Defendant Stables' tractor-trailer[1] while Stables was executing a right turn in his commercial truck. *Id.* at ¶ 8. Plaintiff was injured as a result. *Id.* at ¶ 10.

Plaintiff hired Rene Lujan, an accident reconstruction engineer at TNM Engineering, LLC, to provide an expert witness report under Federal Rule of Civil Procedure ("Rule") 26. Defs.' Mot. at 2; Defs.' Mot. Exh. A ("Lujan Report") (Doc. 38-1). At the beginning of the report, Mr. Lujan says that his accident reconstruction firm "has had an opportunity to: 1) Review the Albuquerque Police Department Crash Report[;] 2) Review the APD videos[;] 3) Inspect the accident scene[;] 4) Inspect the Stables (BRICOR Transportation) Freightliner Truck-Tractor and trailer[; and] 5) Review discovery documents provided." Lujan Report at 1. The report then discusses several still frames from the accident videos, and draws the conclusion that the accident was the result of Defendant Stables' improper turn. *See id.* at 3.

Defendants, for their part, hired James W. Johnson to provide an expert report regarding Plaintiff's operation of the motorcycle. Pl.'s Mot. Exh. A ("Johnson Report"). The Johnson Report analyzes the accident footage and reconstruction reports, and describes Mr. Johnson's opinions on the causes of the accident. Johnson Report at 2. Mr. Johnson reviewed the intersection video, Plaintiff's Deposition, photographs of Plaintiff's motorcycle, an accident reconstruction report by Ronald Feder, and the Lujan Report. *Id.* He also cites to the Motorcycle Safety Foundation Basic Rider Course Rider Handbook and 'Proficient Motorcycling' by David Hough. *Id.* at 3 Mr. Johnson opines that Plaintiff did not "know and have training or experience to know the proper driving techniques at the time of this incident." *Id.* at 2. Mr. Johnson notes that "Mr. Leon chose not to wear a helmet the day of the crash" and that "[i]n [Mr. Johnson's] experience, riders who choose not to wear helmets tend to display a lack of commitment to motorcycle safety." *Id.* Mr.

---

[1] Defendant BRICOR Transportation, LLC employed Defendant Stables and owned the truck involved here. *Id.* at ¶ 8.

Johnson also concludes Plaintiff did not use a proper braking technique, resulting in a "high-side" behavior of the motorcycle that threw Plaintiff off. *Id.* The report concludes that "[t]he fact that the motorcycle, after falling on its left side, came to a halt without coming into contact with the truck shows that, had Mr. Leon used correct braking actions, he would have had the time and space to make a safe controlled stop." *Id.* at 3.

## Defendants' Motion

Defendants oppose the introduction of Mr. Lujan's opinion stated in the Lujan Report and any of his testimony at trial. Defs.' Mot. at 1. Defendants contend that "the testimony of Mr. Lujan should be excluded because (1) his report provides no explanation or bases for his opinions; (2) his opinion, which is stated in one sentence, is a conclusion of law that would invade the province of the jury; and (3) allowing Mr. Lujan to provide explanations for the first time at trial would cause prejudice that cannot be reasonably cured, and would disrupt the trial." *Id.* at 13. What's notable about the Lujan Report is how little it actually says. Defendants' contentions center on the line, "[f]rom the aforementioned collision investigation and reconstruction in my opinion this accident was the result of Mr. Stables making an improper right hand turn from the left turning lane." Lujan Report at 3. Defendants argue that the report does not address the underlying basis for this opinion with sufficient detail as required by Rule 26. Defs.' Mot. at 3.

Federal Rule of Evidence ("FRE") 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In addition to FRE 702, Rule 26 requires that expert witness reports "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that

3

will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Though it appears that much of this information is not in the report, Defendants object primarily to the failure of the Lujan Report to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them . . . [and] the facts or data considered by the witness in forming them[.]" Defs' Mot. at 2.[2]

As described by the Northern District of Oklahoma,

> [i]t is not sufficient that an expert report merely set forth the opinions the expert will offer; it must also describe the reasons and basis for those opinions. Expert reports must include "how" and "why" the expert reached a particular result, not just his conclusory opinion. *See Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). The report is to state "the testimony the witness is expected to present during direct examination." Rule 26 committee note. Amended Rule 26 envisions an expert report so detailed that "in many cases the report may eliminate the need for a deposition." *Id.* "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed*, 165 F.R.D. at 429. In *Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997), the court addressed what is required in an expert report. "To satisfy Fed. R. Civ. P. 26(a)(2)(B) the report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *Id.* at 185.

---

[2] Defendants also object that Mr. Lujan's ultimate opinion "crosses the line from an analysis of facts into principles of law and would essentially dictate a verdict to the jury rather than assist the jury's understanding and weighing of the evidence." Defs' Mot. at 5. According to Defendants, "[w]hether an act is 'proper' or 'improper' requires a determination of whether a motor vehicle statute or other standard of care was violated, a determination to be made by a jury." *Id*. Mr. Lujan's opinion, however, does not go so far as to state the truck's turn in legal terms such as "negligent" or "reckless." And FRE 704(a) "allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact." *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cty., Okl.*, 936 F.2d 472, 476 (10th Cir. 1991) "However, an expert may not state legal conclusions drawn by applying the law to the facts." *Id*. (citing *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979)).

In this circumstance, what Mr. Lujan means by "improper" is vague. If anything, it highlights the deficiency of the report in how he reached that conclusion. There is no reference to what would be "proper" or under which standards a "proper" turn would be measured. Nothing about this conclusion specifically guides how an "improper" turn satisfies any element of duty, breach, or causation. As such, it is marginally helpful to the jury, but it does not overreach into the province of the jury.

*Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008).

It is not difficult for the Court to conclude that the Lujan Report is deficient under Rule 26. The most telling indication of this is Plaintiff's own acknowledgement of the original report's deficiency and Plaintiff's concurrent supplementation of the report:

> Defendants do not actually represent to this Court that they are or ever were unaware of the bases for [Lujan's] conclusions. To the contrary, Defendants' discussion of Stables' failure or inability to properly position his rig, inability to turn in the prescribed manner, and the fact that Stables, nonetheless, chose to attempt the turn in the constricted construction zone, would appear to demonstrate that Defendants know exactly what criticism Mr. Lujan had and why . . . Plaintiff and his counsel believe the nexus, particularly with respect to causation, is fairly obvious. *However, they do acknowledge that, in the Report, the rationale is not as explicitly articulated as it might have been.*

PLAINTIFF'S RESPONSE TO DEFENDANT LAWRENCE STABLES' AND BRI-COR TRANSPORTATION, LLC'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RENE LUJAN ("Plaintiff's Response") (Doc. No. 44) at 2 (emphasis added). Plaintiff then attached a new report from Mr. Lujan with time-stamped photos of the accident and a more detailed explanation of the accident. *See* Pl.'s Resp. Exh. 2. Plaintiff's main response to Defendants' Motion appears to be that (1) Defendants had access to the same discovery materials referenced by the Lujan Report, and therefore can infer the bases for Mr. Lujan's opinion; and (2) Defendant Stables' personal knowledge as a truck driver would provide the requisite knowledge of how to properly execute the turn. *See* Pl's Resp. at 5. Rather than meet his burden to justify why his expert, Mr. Lujan, can express an expert opinion, Plaintiff seeks to put the burden on Defendants to demonstrate they *do not* know the bases for Mr. Lujan's expert opinion. This cannot suffice under Rule 26.

The Lujan Report fails to meet the requirements of Rule 26 because Mr. Lujan's opinion that the turn is improper refers to no specific facts underlying the opinion. The report merely

describes the accident, then jumps to the conclusion that it was caused by an improper turn. There is nothing demonstrating the impropriety of the turn or how Mr. Lujan had specialized knowledge in forming such an opinion. Furthermore, if the report did not contain this one opinion, it would really say nothing more than the accident was a result of Defendant Stables turning and colliding with Plaintiff—a conclusion obvious from the accident footage itself.

A litigant who fails to comply with the requirements of Rule 26 "does so at his own peril." *Cohlmia*, 254 F.R.D. at 429. Under Rule 37(c):

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37; *see Kern River Gas Transmission Co. v. 6.17 Acres*, 156 Fed. Appx. 96, 101 (10th Cir. 2005). Determination of whether a violation of Rule 26(a) is justified or harmless is left to the broad discretion of the trial court. *Cohlmia*, 254 F.R.D. at 429 (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). The court should consider the following factors: (1) prejudice or surprise to the party against whom the report is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and, (4) the moving party's bad faith or willfulness. *Cohlmia*, 254 F.R.D. at 429.

Given the Lujan Report's deficiency, the Court will have to determine if the error is substantially justified or harmless. Plaintiff's claim that Mr. Lujan submitted his report at the last minute, as well as that Plaintiff's counsel's claim that he "was not concerned by the brevity" of the Lujan Report due to the "straightforward nature of the case[,]" do not justify the Lujan Report's

6

deficiencies. *See* Pl.'s Resp. Exh. 1. Defendants argue they are prejudiced by having to make up for the Lujan Report's deficiencies too close to, or at, trial. *See* Defs.' Mot. at 11–12. If the trial date were still set for May 4, 2020, the Court would be more inclined to simply exclude the expert opinion expressed in the report. The trial, however, has been continued at least beyond June 2020, meaning Defendants will have ample time to prepare a cross examination of Mr. Lujan. The Court therefore cannot conclude that Defendants are prejudiced by a substantively deficient expert report with several months, at least, before trial.

Plaintiff is also willing to "cure" the prejudice and thinks he has done so by providing a supplemental report ("Supplemental Report"). Plaintiff's Supplemental Report, however, offers new analysis, new reference to trucking safety standards, and an opinion not contained in the Lujan Report. And the introduction of new information, rather than a mere clarification of the existing information, creates new work for Defendants. As noted in *Cohlmia*,

> [a] supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)."

*Cohlmia*, 254 F.R.D. at 433 (quoting *Palmer et al. v. Asarco, et al.*, 2007 WL 2254343 at *3 (N.D. Okla. Aug. 3, 2007)). The *Cohlmia* Court refused to give the expert "a second bite at the apple—an opportunity to correct fatal defects in the reports they have submitted." *Id*. Likewise, Plaintiff had an opportunity to file a compliant report months ago, and now seeks to proffer a better one once Defendants have objected.

7

The Court, however, takes caution with complete exclusion of Mr. Lujan's expert opinions. The Tenth Circuit has previously reversed a district court's decision to exclude an expert on Rule 26 grounds where a reasonable opportunity to cure existed and exclusion would be drastic. *See Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009). As described in *Gillum*, "[t]he parties to a litigation are not merely players in a game, trying to catch each other out. Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." The *Gillum* Court disagreed with the district court's finding that cure was not possible, given that the discovery period had not yet ended and the opposing party knew of the substance of the expert's testimony. *Id*. Although the *Gillum* Court disapproved of providing inadequate expert reports, [u]nder the circumstances of this case, however, the total exclusion of [the expert's] testimony, which necessarily resulted in the grant of summary judgment for the United States, was too extreme a sanction." *Id*.

The April 20, 2020, Daubert Hearing gave the Court an opportunity to assess the appropriateness of any cure to the deficient reports. The Court heard testimony from Mr. Lujan about his qualifications.[3] Mr. Lujan is a licensed professional engineer who has been doing accident reconstruction since 1986 in Texas, Oklahoma, and New Mexico. Daubert Hearing, April 20, 2020, Tr. 6:9–24. Mr. Lujan has attended a number of classes, workshops, and trainings related to accident reconstruction. *Id*. at 7:1–2. Mr. Lujan has also "testified a number of times, primarily in State Court, but [he has] testified in Federal Court as well." *Id*. at 7:3–6. Most of the work Mr. Lujan performs is with "heavy trucks" and his firm analyzes "100 to 150 cases per year[.]" *Id.* at 18:1–2. Because of Mr. Lujan's qualifications and experience, the Court finds that Mr. Lujan is qualified as an expert in motor vehicle accident reconstruction.

---

[3] This MEMORANDUM OPINION AND ORDER cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

With respect to the opinions expressed in the Supplemental Report, Mr. Lujan's expertise in commercial truck driving techniques is less clear. None of the cases Plaintiff cites in his response brief to Defendants' Motion to Strike support a conclusion that an accident reconstruction expert is automatically qualified to testify about trucking safety or operation. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS LAWRENCE STABLES AND BRI-COR TRANSPORTATION, LLC'S MOTION TO STRIKE UNTIMELY SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF RENE LUJAN (Doc. No. 53) at 5–7. In fact, some of the cited cases seem to suggest the opposite. *See, e.g., Cameron v. Westbrook*, 2012 WL 385633 (Ariz. Ct. App. 2012) (accident reconstructionist not allowed to testify regarding standards governing commercial truck drivers).

Mr. Lujan, however, testified that, although he is "certainly not a trucking expert," his accident construction work "is primarily heavy trucks, and so the majority of [his] work involves trucks and trailers." Tr. 8:24–25, 9:1–2. Mr. Lujan has taken some classes regarding commercial motor vehicles in relation to accident reconstruction, *see id.* at 10:4–14, but does not possess a commercial driver's license or any training in commercial vehicle operation. *Id.* at 10:16. Some of Mr. Lujan's opinions in the supplemental Lujan Report rely on commercial vehicle operation publications by the New Mexico Motor Vehicle Division, which Mr. Lujan claims accident reconstruction engineers typically rely on. *Id.* at 23:14–19. The Court believes that Mr. Lujan's work necessarily involves some understanding of commercial truck operation, but not so much to qualify him as an expert on the matter.

The Court believes that complete exclusion of Mr. Lujan's testimony at trial is too drastic of a sanction for failing to adhere to Rule 26 under these circumstances. Although exclusion of Mr. Lujan's opinion stated in the Lujan Report, given how deficient it is, would likely not be fatal

for Plaintiff's case, Mr. Lujan may still have important and relevant information to offer to a jury. This could include opinions about commercial trucking operation upon which Mr. Lujan has sufficient, reliable experience—so long as he elaborates how. In addition to the new opinion expressed in the Supplemental Report, during the Daubert Hearing on April 20, 2020, it appeared that Mr. Lujan came up with yet another opinion. *See* Tr. at 30:10–14; 33:20–24. This one related to the impropriety of making a turn at an intersection where construction was ongoing.

Defendants will have plenty of time to prepare a defense to Mr. Lujan's testimony. Given this, Mr. Lujan's testimony is unlikely to cause a significant wrinkle in trial preparation this far out from any trial date. The Court will therefore allow Defendants to procure a new expert report from Mr. Lujan that complies with Rule 26 and FRE 702. Mr. Lujan's expert opinions expressed in the new report will be limited to accident reconstruction. To the extent any opinions implicate commercial vehicle operation or safety, Mr. Lujan must specifically articulate the basis for his knowledge or experiences to express such an opinion as it relates to accident reconstruction. The Court will also open a limited discovery period within which Defendants may depose Mr. Lujan, if they so wish. As a sanction under Rule 37 for non-compliance with Rule 26 and filing the Supplemental Report well after discovery concluded, the Court will require Plaintiff to pay Defendants' costs and attorney's fees incurred in regard to Defendants' Motion to Strike.

**Plaintiff's Motion**

Plaintiff opposes the introduction of testimony based on the Johnson Report on the ground that Mr. Johnson does not qualify as an expert under the criteria of FRE 702. *See* Pl's Mot. at 2. Plaintiff contends that:

> Mr. Johnson does not possess the qualifications to be qualified as an expert witness. Defendants have not pointed to a single publication authored by Mr. Johnson regarding motorcycle operation and/or safety, not does his curriculum vitae list any publications. In his report, Mr. Johnson states he has not testified as an expert witness in any court proceedings or depositions. Defendants cannot simply ordain Mr. Johnson as an expert witness when he lacks the required credentials under the law.

*Id*. Plaintiff does not object that the Johnson Report fails to meet the requirements of Rule 26. At the April 20, 2020, Daubert Hearing, however, Plaintiff's counsel appeared to raise new substantive objections to Mr. Johnson's testimony—namely, that Mr. Johnson did not have expertise in human factors or motorcycle dynamics. *See* Tr. at 47:9–15, 49:1–6.

In reviewing whether an expert opinion is admissible, a district court usually undergoes a two-step analysis. *See Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 969 (10th Cir. 2001). First, the Court should determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *See id*. Second, if the expert is so qualified, the Court must determine whether the expert's opinions are "reliable" under the principles set forth under *Daubert* and *Kumho Tire*. *Id*. To make this assessment, a district court may look to: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Kumho Tire*, 526 U.S. at 149–150 (citing *Daubert*, 509 U.S. at 593–594). "The Daubert factors are 'meant to be helpful,

not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009).

Mr. Johnson appears qualified to testify to general matters regarding motorcycle operation and safety, given his experience as a Motorcycle Safety Foundation rider coach since 2006 and as a Harley-Davidson Riding Academy rider coach since 2014. *See* Doc. 39 Exh. B at 1. According to his CV, he is also a former motorcycle service director and amateur motorcycle racer. *Id*. Mr. Johnson testified that the has "also done extensive training, all that [he] could get with the MSF, three different international conferences, yearly training of one day at a time and online training with, again Motorcycle Safety Foundation." Tr. at 40:1–5. The Johnson Report describes how Mr. Stables crashed as a result of improper riding technique, something of which Mr. Johnson should have knowledge as an experienced rider and riding coach.

The Court has also previously allowed similar testimony and expert reports from motorcycle safety instructors. In *Burrell v. Harley Davidson Motor Co., Inc.*, No. CIV 11-393 JP/RHS, 2012 WL 12864461, at *4 (D.N.M. July 27, 2012), the Court found that an expert who: "(1) [] 'has been riding motorcycles for over fifty (50) years, and has traveled over 500,000 miles without an accident or ticket,' (2) [] has 'received training and instructor certification from the Motorcycle Safety Foundation ("MSF"), a named Defendant,' and (3) [] 'is the author of a two-volume reference book regarding motorcycle safety, and the co-author of other publications relating to motorcycle safety'" had sufficient knowledge to testify as an expert about issues of motorcycle safety. Aside from the lack of publications, Mr. Johnson appears to have similar experience, with the addition that he has been a riding instructor for fifteen years. And his testimony at the Daubert Hearing corroborated his extensive riding experience.

Furthermore, the arguments that Mr. Johnson is unqualified because he has not published anything with respect to motorcycle safety or testified as an expert are equally unavailing. As noted by a court in the District of Colorado,

> [t]here is no legal requirement that an expert be an author of a publication in the relevant field of expertise. Rather, published works are just one of many factors which may be considered when assessing qualifications. There is no legal requirement that an expert have previous experience testifying as an expert witness. Of course, such a requirement would eliminate the possibility that a person otherwise qualified as an expert ever could testify as an expert for the first time. Prior expert testimony is just one of many factors which may be considered when assessing qualifications.

*Vaughn v. Safeway, Inc.*, No. 14-CV-01066-REB-NYW, 2015 WL 7307936, at *2 (D. Colo. Nov. 20, 2015).

The Court understands Plaintiff's concerns regarding Mr. Johnson's lack of formal academic training in human factors analysis or motorcycle dynamics. But FRE 702 does not require that every expert must be a formal clinician for every potential scientific aspect of their specialized knowledge. "[T]he evidentiary rationale that underlay the Court's basic *Daubert* gatekeeping determination [is not] limited to scientific knowledge . . . [FRE] 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co.*, 526 U.S. at 148 (internal quotation marks and citations omitted). Training through the Motorcycle Safety Foundation may not carry the rigor of a formal, peer-reviewed, academic clinical study. But as the Court recognized in *Burrell*, it still has some reliable value upon which an expert can base motorcycle safety and riding technique opinions on subjects that a layperson would lack knowledge. The Court finds that Mr. Johnson meets the FRE 702 standards for testifying as an expert about basic motorcycle safety and riding technique. The Court, however, will also require Defendants to provide a more detailed expert report from Mr. Johnson

13

that addresses the concerns Plaintiff raised at the Daubert Hearing. In addition, Plaintiff may depose Mr. Johnson within the period given for Defendants to depose Mr. Lujan.

Plaintiff's next contention is that Mr. Johnson is biased "against riders who do not wear helmets, without providing any statistical information to support his theory." Pl's. Mot. at 3. This argument is based upon the second opinion of the Johnson Report, which comments "[i]n my experience, riders who choose not to wear helmets tend to display a lack of commitment to motorcycle safety." Johnson Report at 2. Defendants respond that any bias goes to the weight of the evidence, not admissibility.

In this district, witness bias "is a proper subject for cross-examination; evidence of bias would not be a proper basis for exclusion of expert testimony." *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1240 (D.N.M. 2013) (citing *Cruz–Vazquez v. Mennonite Gen. Hosp.*, 613 F.3d 54, 59 (1st Cir. 2010)). "[I]t is the jury's role to assess any potential bias and the impact of any bias on the weight to give her testimony." *McCluskey*, 954 F. Supp. 2d at 1241. The Court will not exclude Mr. Johnson's opinions for bias because Plaintiff would be able to attack his opinions on cross-examination to demonstrate bias.

Under FRE 403, however, "a district court can exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or jury confusion." *Chiddix Excavating, Inc. v. Colorado Springs Utilities*, 737 F. App'x 856, 864 (10th Cir. 2018) (citing *Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, 816 F.3d 1284, 1288 (10th Cir. 2016)) (internal quotation marks omitted). The Court believes that the minimal probative value added by Mr. Johnson's opinion about helmet use is substantially outweighed by the risk of unfair prejudice and confusing the jury. Mr. Johnson's opinions on Plaintiff's training, skill, and proper operation of the bike should suffice without reference to Plaintiff's failure to use a helmet.

14

Accordingly, the Court will not allow Mr. Johnson to testify to his opinion on helmet use unless this is first raised in cross-examination.

**Defendants' Motion to Strike**

As a result of the Supplemental Report, Defendants filed their Motion to Strike. Defendants argue that the updated report is untimely because Plaintiff disclosed it "more than six months after Plaintiff's deadline to provide Rule 26 [] expert reports, more than two months after discovery closed, and two months prior to the start of a jury trial." Mot. to Strike at 1. Defendants also argue that "Mr. Lujan's new report attempts to insert new opinions, including an unqualified opinion on truck driving techniques." *Id*.

Rule 12(f) guides the applicable standards for motions to strike certain material in "pleadings." *See* Fed. R. Civ. P. 12(f). Rule 7(a)'s definition of "pleadings" does not include motions themselves or memoranda. *See* Fed. R. Civ. P. 7(a); *see also Searcy v. Soc. Sec. Admin.*, 1992 WL 43490 at *2 (10th Cir. 1992) (unpublished) ("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda; only motions to strike unsigned papers under Rule 11, third-party claims under Rule 14(a), and certain matters in pleadings under Rule 12(f) are contemplated by the Federal Rules of Civil Procedure.") Because "[m]otions and memoranda are not included within the definition of 'pleading' under F.R.C.P. 7(a)[,]" a court may not strike a motion or excerpts thereof from the record. *Id*. Accordingly, the Court will not strike the Supplemental Report from the record.

IT IS THERFORE ORDERED that:

(1) DEFENDANTS LAWRENCE STABLES' AND BRI-COR TRANSPORTATION, LLC'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RENE LUJAN (Doc. No. 38) is GRANTED IN PART consistent with this opinion;

15

(2) Plaintiff's MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY BY JAMES W. JOHNSON (Doc. No. 39) is GRANTED IN PART consistent with this opinion;

(3) DEFENDANTS LAWRENCE STABLES AND BRI-COR TRANSPORTATION, LLC'S MOTION TO STRIKE UNTIMELY SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF RENE LUJAN (Doc. No. 49) is DENIED;

(4) Plaintiff must pay the Defendants' reasonable costs and attorney's fees related to DEFENDANTS LAWRENCE STABLES AND BRI-COR TRANSPORTATION, LLC'S MOTION TO STRIKE UNTIMELY SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF RENE LUJAN (Doc. No. 49); by May 11, 2020, Defendants must file an itemization of their requested costs and attorney's fees related to their Motion to Strike;

(5) By May 11, 2020, the parties must file new expert witness reports that fully comply with Rule 26, including clearly stating each expert opinion that each expert intends to offer; and

(6) By July 10, 2020, the parties may depose each other's expert witnesses.

_____
SENIOR UNITED STATES DISTRICT JUDGE